260

Hillsborough,
No. 5473.

HERBERT T. DUANE, JR.

*v.*

NORTHEAST HANDLING SYSTEMS, INC.

Argued May 5, 1966.
Decided June 30, 1966.

*Burns, Bryant, Hinchey & Nadeau* and *Paul R. Cox* ( *Mr. Cox* orally ), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Richard C. Kohls* ( *Mr. Kohls* orally ), for the defendant.

LAMPRON, J. On June 8, 1961 the plaintiff entered in a contract with Dempster Brothers, Inc. of Knoxville, Tennessee for the purchase of a Dumpmaster body for the amount of $14,383 and accessory containers for $11,930. Roy H. Stewart, the majority stockholder in the defendant company, Northeast Handling Systems, Inc. with its place of business in Manchester, signed the contract as " Salesman. " The plaintiff delivered to Stewart on

that date a check for $600 and on June 30 a second check for $2,500 constituting the $3,100 sought to be recovered by the plaintiff from Northeast. Plaintiff was to forward another payment of $1,600 in the last week of July and on September 31, 1961 furnish a bank guarantee of the balance due.

In that summer the plaintiff was recalled to military service which disrupted his business plans and he so notified Northeast and Dempster. Stewart informed the plaintiff on behalf of Dempster that it would rather sell the ordered equipment and accessories than to store them and have their payments held up due to plaintiff's military obligations.

The Trial Court found as follows:

"( 3 ) By virtue of subsequent correspondence and conferences between the Plaintiff and Mr. Stewart, representing the Defendant, and the Dempster Company, agreement was reached which substantially cleared the way for the resale of the subject equipment, occasioned by the Plaintiff's unexpected recall to Military Service.

"( 4 ) The Plaintiff authorized Mr. Stewart to sell his interest in the unit to Downing.

"( 5 ) The sale to a third party took place sometime in January 1962, and the Plaintiff at that time did not request the return of any monies paid in on account, nor were there any conversations regarding refund until the Plaintiff made such request sometime in August 1962, at the time of his discharge from Military Service.

"( 6 ) The plaintiff voluntarily participated in the agreements surrounding the resale of the subject unit. In addition, he distinctly stipulated that his truck be sold with the unit for which he would and did receive full payment from the Downing Container Service, the same company that purchased the subject Dempster-Dumpmaster.

"( 7 ) The Plaintiff's various correspondence and conferences with Mr. Stewart and Dempster Brothers, Inc. subsequent to the signing of the contract did not effectuate a valid cancellation . . . or modification of the original contractual obligations but resulted in a resale of the subject equipment during which time the Defendant, Mr. Stewart and the Dempster Company were acting more in the nature of accommodation parties upon request, without ever consenting to the variance . . . or modification of the terms of the contract which carried with it the Plaintiff's unconditional guarantee to make full payment.

"( 8 ) The Dempster was sold to the Lovard Company at the Dempster Brothers' cost. In turn Lovard sold to the Downing Company. " The Court also ruled that " no accord or satisfaction took place between the parties. "

The plaintiff maintains that the finding and ruling of the Trial Court that the contract between him and Dempster was still in force are completely against the weight of the evidence. As stated in his brief " the plaintiff contends that the only reasonable conclusion from the evidence in this case is that there was a termination of the original contract between the plaintiff and Dempster, whether such termination be labelled a cancellation, discharge, rescission, accord and satisfaction, novation, or the like. " He argues further that because of the termination of the contract, coupled with the fact that Dempster was a disclosed principal, so that neither Stewart nor Northeast acquired any independent right to the deposit ( Restatement ( Second ), Agency, ·s. 320 ), a verdict should have been directed in his favor.

Having admitted entering in a contract with Dempster, the plaintiff had the burden of proving that his obligations thereunder had been terminated in such a way as to entitle him to the return of his deposit. *Newcomb* v. *Ray*, 99 N. H. 463; 6 Corbin, Contracts, *s*. 1280, *p*. 134 ( 1962 ); Simpson, Contracts ( 2d *ed.* ) *ss*. 205-208, *pp*. 414-421 ( 1965 ). The Trial Court having found against him, the plaintiff now has the burden of showing in this court that the evidence was so conclusively in his favor that no reasonable man could fail to find for him. *Romano* v. *Company*, 95 N. H. 404, 406; *Condiles* v. *Waumbec Mills*, 95 N. H. 127, 128; *Bryson* v. *Carroll*, 93 N. H. 287.

Plaintiff testified that he was activated in military service about August 25, 1961 and that in November his truck to which the Dumpmaster body had been attached was " sitting " in Knoxville as he had told Dempster " not to ship it, to see what would happen. " Later he was informed by Dempster, through Stewart acting for Northeast, its franchise dealer "that they had a chance to get rid of it for me, and that I could reorder it when I got out of the Service which would mean I would not be left with an old piece of equipment a year old when I got out. " Plaintiff's truck and the disposal unit were sold with his consent. He was paid directly for the truck, the unit was sold to another dealer at Northeast's cost so that it made no profit or commission on the sale.

Plaintiff also testified that he intended to resume his original plans to enter into the disposal business when he was released. He did not demand the $3,100 "because I had hoped to start up again after my release from active duty, and I felt that if I left the money on deposit I would show good faith and I would have an easier time financing or getting going when I got out." He also testified that he knew that Dempster and Northeast had a commission arrangement. Plaintiff further testified that he never heard from Dempster as to whether he was still bound on the agreement or whether he owed it any "money or anything." After he was discharged from military service August 20, 1962, Stewart contacted him "as to what I wanted to do. At that time I still didn't know, because I didn't have the financing. I think a little later on we discussed the agreement . . . and I asked, I think around October . . . for the return of my deposit." Plaintiff never had any understanding that Dempster would return his original down payment. It is agreed that there was never any agreement between plaintiff and Stewart to return the $3,100 or any part of it.

Stewart testified that after plaintiff's truck and equipment were sold in January 1962, because Duane wanted to be protected, he entered an order for the same equipment so that plaintiff would not have to pay a higher price when he returned from service. Stewart also testified that while Duane was in the service, he received "a letter indicating he could not get out soon enough, that he was just waiting for the time when he could go back into this business."

An examination of the evidence fails to reveal that it was so preponderant that the plaintiff's contract had been terminated that we must conclude that the Trial Court's finding and ruling that the contract had not terminated resulted from a failure of the Court to act properly or intelligently in its consideration of the evidence or that it was misled in arriving at an unreasonable conclusion from it. *Romano* v. *Company*, 95 N. H. 404, 406; *Condiles* v. *Waumbec Mills,* 95 N. H. 127, 129.

Stewart testified that Northeast's normal profit on the sale of this equipment was 20% of $14,355.38, the price of the body, and of $11,930 the price of the containers. This commission would be far in excess of the $3,100 deposit made by the plaintiff. The record does not compel a finding or ruling that the plaintiff has conclusively proved that the Court's denial of his right to recover

his down payment will allow the defendant to retain an amount in excess of the damage it has suffered by plaintiff's failure to perform his contract. 5A Corbin, Contracts, *s.* 1124, *pp.* 13, 16; Restatement, Contracts, *s.* 357 ( 1 ), *comments* a, g. *Cf. Newcomb* v. *Ray*, 99 N. H. 463.

*Judgment for defendant.*

All concurred.